UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MOSHE SHTRAUCH,

                Plaintiff,

v.                                                                   3:15-cv-370

KEVIN M. DOWD, individually and as
the administrator of the Supreme Court
building in Norwich, New York

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States Judge

## DECISION and ORDER

Plaintiff commenced the instant action, alleging that Defendant violated Plaintiff's constitutional rights by ordering him from the Chenago County, New York, Courthouse. Presently before the Court is Defendant's motion to dismiss the Plaintiff's Amended Complaint. See dkt. # 10. Also before the Court is Plaintiff's motion for leave to file a Second Amended Complaint. See dkt. # 11.

## I. BACKGROUND

Plaintiff commenced this action by filing a Complaint on March 29, 2015. See dkt. # 1. The next day, Plaintiff filed an Amended Complaint. See dkt. # 2 ("Amended Cmplt."). According to the Plaintiff's Amended Complaint, at some point in November 2014, Defendant Kevin M. Dowd, a Justice on the Chenango County Supreme Court, "invited" the Plaintiff, who was the defendant in a divorce proceeding, to a meeting in his chambers. (Id. at ¶ 8). Also present was Shtrauch's wife, plaintiff in the divorce suit and her counsel. (Id.). During that meeting, Defendant began "banging on the table

with his fist[.]" (Id. at ¶ 11). He "yelled at [Shtrauch] that he does not need anybody to challenge his integrity[.]" (Id.). When Plaintiff "did challenge his integrity, Defendant "called Plaintiff 'a liar', and 'a very dangerous person[.]'" (Id.). After that alleged outburst, Defendant recused himself from the divorce proceeding, telling Plaintiff "'congratulations, now you won, you can now go and finish your law degree.'" Id. Defendant then "ordered" the armed court attendant to "'get [Plaintiff] out of my courthouse.'" (Id.).

Plaintiff further alleges that, shortly before granting the recusal motion, Judge Dowd had "plopped his hand on the file that was in front of him[.]" (Id. at ¶ 12). Plaintiff could see a copy of his motion to recuse. (Id.). Judge Dowd demanded that Plaintiff tell him what the motion was, and Plaintiff responded by asking "'isn't it obvious, it's a motion to recuse[.]'" (Id.). Defendant then asked where Plaintiff acquired "pictures of his children playing with Claudette Newman's grandchildren." (Id.). Plaintiff explained that the pictures were from Facebook. (Id.). Defendant responded that "'we figured that much[.]'" (Id.). Plaintiff contends that this statement demonstrates that "Judge Dowd knew about it, and was upset that Plaintiff mentioned it." (Id.). Plaintiff also alleges that "[a]t the time Defendant Dowd ordered removal of Plaintiff from the courthouse, Defendant Dowd recused from Plaintiff's divorce proceedings, had no role in the proceedings and was not covered by judicial immunity." (Id. at ¶ 24). Instead, Plaintiff contends, "Defendant Dowd acted under color of state law and using his authority as a state judge and the administrative judge in charge of personnel in the building." (Id. at ¶ 25).

Plaintiff did not want to exit the courthouse when Defendant ordered him to

2

leave. (Id.). He contends that he did not act inappropriately during his conference in Judge Dowd's chambers, and nothing in his conduct served to "warrant forcible removal from the building." (Id. at ¶ 29). Plaintiff states that "the courthouse does not belong to Defendant Dowd" and that a "courthouse is a public building where Plaintiff had a right to be until the closing of the courthouse." (Id. at ¶¶ 13-14). Defendant ordered Plaintiff's removal shortly before noon. (Id. at ¶ 15). Plaintiff tried to stop when he left Defendant's chambers, but the court attendant, who was armed, directed him to "'get going,'" while standing behind the Plaintiff's back. (Id. at ¶ 16). Feeling intimidated, Plaintiff left the Courthouse. (Id.). Plaintiff alleges that the court attendant "hover[ed] behind the Plaintiff's back while the Plaintiff was raising himself out of the chair, yelled at Plaintiff when" he turned the wrong way out of his chair, and then followed Plaintiff all the way out of chambers, into the public hallway, and out of the building. (Id. at ¶ 21). He did not permit Plaintiff to stop. (Id.).

After leaving the building, Plaintiff encountered a local attorney in the parking lot and told the attorney what had happened. (Id. at ¶ 17). The attorney promised Plaintiff he would find out the name of the court attendant when he went into the courthouse. (Id.). Later, Plaintiff met with the attorney, who had verified that the attendant was named Ken. (Id. at ¶ 18). The attorney also reported that he had been admitted to the courthouse after Defendant ejected Plaintiff. (Id.). The courthouse did not close until 4:30 p.m. (Id. at ¶ 22). Similarly, though the Defendant threw Plaintiff out, he permitted his wife and her attorney to remain. (Id. at ¶ 19).

Plaintiff alleges that he is Jewish and an Israeli national. (Id. at ¶ 30). He speaks with "a heavy Jewish accent." (Id. at ¶ 31). About a month before Defendant

3

Dowd ordered him to exit the courthouse, Plaintiff alleges that he had complained to the Administrative Judge of the Sixth Judicial District, Robert Mulvey, who is Defendant Dowd's supervisor, of an incident involving a court attendant in Chenango County. (Id. at ¶ 32). That attendant is "regularly present in court proceedings where Plaintiff is and was a party." (Id.). On June 14, 2014, that attendant was working as a registration officer at a community event where police issued identity cards for children in an effort to protect their safety. (Id. at ¶ 33). Plaintiff brought his minor child to the event. (Id. at ¶ 34). Though the court attendant already knew Plaintiff's and his childrens' names from previous court proceedings, he asked for the names again. (Id. at ¶¶ 35-36). The attendant then immediately asked Plaintiff if he knew it was Hitler's birthday (it wasn't). (Id. at ¶ 37). This comment made Plaintiff feel "shaken up and intimidated," as he had lost many family members in the Holocaust. (Id. at ¶¶ 38-42). Plaintiff complained to Judge Mulvey about this conduct, and his lack of access to his own records in family court. (Id. at ¶ 43-44).

Plaintiff alleges that Judge Mulvey made Judge Dowd aware of Plaintiff's complaint, and that Judge Dowd then chose to use that particular court attendant to remove Plaintiff from the courthouse. (Id. at ¶¶ 46-47).

Plaintiff further alleges that Defendant Dowd's conduct began after Plaintiff "complained against" Defendant "to the NYS Judicial Conduct Commission, to the 6[th] Administrative District, Judge Mulvey, and made a motion to recuse Defendant Dowd." (Id. at ¶ 48). Before recusing himself, Defendant allegedly accused Plaintiff of "'impugning'" his integrity and declared that Plaintiff's conduct made him a dangerous person. (Id. at ¶ 49).

Plaintiff alleges that his motion to recuse was based on both alleged misconduct by Defendant in the divorce proceedings and Defendant's alleged failure to disclose that his law clerk would be a witness in Plaintiff's divorce proceedings. (Id. at ¶ 50). The law clerk's grandchildren allegedly played at the home of Plaintiff's mother-in-law, his children allegedly visited the law clerk's home, and the children of the law clerk's step daughter played with Plaintiff's children. (Id.).

Plaintiff's Amended Complaint alleges that Defendant Dowd, acting under color of law, violated his rights to access to the courts and courthouse under the First, Fifth and Fourteenth Amendments to the United States Constitution. (Id. at ¶ 62). Plaintiff also alleges that removing him from the courthouse amounted to an unreasonable seizure in violation of the Fourth Amendment. (Id. at ¶ 63). Plaintiff seeks "declaratory, injunctive relief precluding Defendant from ever presiding over Plaintiff's cases and imposing upon Defenant an order of protection preventing Defendant from, directly or indirectly, harass[ing] and/or intimidat[ing] Plaintiff and his family members in any way." He also seeks "actual, nominal and punitive damages[.]" Plaintiff further contends that the circumstances suggest retaliation and intimidation based on Plaintiff's exercise of his First Amendment Rights and because of his national and ethnic origins. Plaintiff seeks $10 million in damages.

After being served with the Amended Complaint, Defendant filed a motion to dismiss, which is presently before the Court. Plaintiff both responded to the motion and moved the Court for leave to file a Second Amended Complaint. Defendant has responded, bringing the case to its present posture.

5

## II. LEGAL STANDARD

### A. Motion to Dismiss

Defendant has filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). When, as here, the Plaintiff proceeds *pro se*, the Court must "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)). "This is especially true when dealing with pro se complaints alleging civil rights violations." Id.

### B. Motion to Amend

Plaintiff seeks leave to file an second amended complaint. Federal Rule of Civil Procedure 15(a)(1) permits a party to "amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P.

6

15(a)(1)(A-B). All other amendments to pleading may be filed "only with the opposing party's consent or the court's leave." FED. R. CIV. P. 15(a)(2). A "court should freely give leave when justice so requires." Id. "Where the amended portion of the complaint would fail to state a cause of action, however, the district court may deny the party's request to amend." Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000). Courts have a "good reason to deny leave to amend . . . when such leave would be futile." Acito v. IMCERA Group, 47 F.3d 47, 55 (2d Cir. 1995).

## III. ANALYSIS.

### A. Defendant's Motion

Defendant seeks dismissal on various grounds, which the Court will address as appropriate.

#### 1. Judicial Immunity

Defendant first argues that the Plaintiff's claim must be dismissed because he is entitled to judicial immunity for his actions. Defendant contends that the conduct complained of was the conduct of a judge, and Plaintiff may not sue him for either compensatory or injunctive relief. Plaintiff responds that Defendant was not acting as a judicial officer at the time in question, as he had recused himself from the case. Once Defendant recused himself, Plaintiff argues, "he . . . officially left the case and all of his acts after that recusal are acts of a lay individual and not acts of a public official." (Plaintiff's Brief, dkt. # 11-1, at 5). Plaintiff also contends that the doctrine of Ex Parte Young, 209 U.S. 123 (1908), prevents Defendant from claiming immunity on any claims for injunctive relief.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009). The purpose of this rule is "to insure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" Id. (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1871)). "The cloak of immunity is not pierced by allegations of bad faith or malice, even though 'unfairness and injustice to a litigant may result on occasion.'" Tucker v. Outwater, 118 F.3d 930, 932 (2d Cir. 1997) (quoting Mireles v. Waco, 502 U.S. 9, 9 (1991)) (other internal citations omitted). Judicial immunity applies to actions brought pursuant to 42 U.S.C. § 1983. Id. Courts apply "a two-part test for determining whether a judge is entitled to absolute immunity from damage claims." Id. at 933 (citing Stump v. Sparkman, 435 U.S. 349, 360 (1978)). First, a judge is subject to liability "only when he has acted in the '*clear absence of all jurisdiction*.'" Id. (quoting Stump, 435 U.S. at 356-57) (emphasis in original). "Second, a judge is immune only for actions performed in his judicial capacity." Id.

### a. Claim for Damages

Plaintiff's argument here is largely that Defendant was not engaged in actions of a judicial nature when he injured Plaintiff. "A judge is not protected under the doctrine of judicial immunity . . . if the action in question is not judicial in nature, as when the judge performs an administrative, legislative or executive act." Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2004). Distinguishing between judicial actions entitled to immunity and actions which "happen to have been performed by judges . . . but are

administrative, legislative or executive in nature" can be difficult. Id. Courts "look to state law to determine whether [judges] acted within their jurisdiction and to inform [the] inquiry as to whether they acted . . . in their judicial capacities." Id. at 76. "In determining whether an act by a judge is 'judicial'" and worthy of immunity, a court is "to take a functional approach, for such 'immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches[.]'" Bliven, 579 F.3d 209-210 (quoting Forrester v. White, 484 U.s. 219, 227 (1988)). The Court should consider "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" Id. at 210 (quoting Stump, 435 U.S. at 362).

"[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." Id.[1] An action need not be part of a court proceeding; "[t]he fact that a proceeding is 'informal and *ex parte* . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character.'" Id. (quoting Forrester, 484 U.S. at 227). Still, "'[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts.'" Id. (quoting Forrester, 484 U.S. at 228). Actions of this sort include, "demoting or dismissing a court employee and compiling general jury lists to affect all future trials[,]"

---

[1] The Bliven court pointed to activities such as "issuing a search warrant; directing court officers to bring a particular attorney before a judge for a judicial proceeding; granting a petition for sterilization; and disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case." Bliven, 579 F.3d at 210 (internal citations omitted).

9

as well as "promulgating a code of conduct for attorneys." Id. (internal citations ommitted).

Plaintiff complains about the conduct of Defendant Dowd in several ways. His Amended Complaint alleges that Defendant failed to disclose that his law clerk would be a witness in Plaintiff's divorce proceedings. (Amended Complaint at ¶ 50). The law clerk's grandchildren allegedly played at the home of Plaintiff's mother-in-law, his children allegedly visited the law clerk's home, and the children of the law clerk's step daughter played with Plaintiff's children. (Id.). Further, Plaintiff alleges that Defendant used a court officer Defendant knew had previously made insulting comments about Plaintiff's ethnic heritage and religion to supervise the courtroom in which Plaintiff appeared. Defendant also used called Plaintiff a liar and acted in a hostile and intimidating manner in the proceeding where he granted Plaintiff's recusal motion. Most significantly from Plaintiff's perspective, Defendant had Plaintiff escorted from the building by this officer after recusing himself.

The Court finds that immunity applies to the conduct Defendant Dowd allegedly engaged in and a claim for money damages against the Defendant is unavailable to Plaintiff. The conduct about which Plaintiff complains was all conduct directly related to the litigation. Plaintiff contends that Defendant engaged in inappropriate and offensive behavior. Even accepting such allegations as true, the complained-of conduct is still protected: "[t]he cloak of immunity is not pierced by allegations of bad faith or malice, even though 'unfairness and injustice to a litigant may result on occasion.'" Tucker, 118 F.3d at 932.

Plaintiff appears to understand that the Defendant's conduct in presiding over his

divorce case is protected by judicial immunity, as he attempts to use the Defendant's grant of the recusal motion as a bright line dividing conduct subject to suit from conduct protected by immunity. Plaintiff does not cite to any case law that supports this proposition. Instead, he simply points out that no cases explicitly analyze the effect of recusal on judicial immunity. The Court finds this position unpersuasive. In making the "functional" determination of whether an act is judicial in nature, the Bliven court underscored that a court should consider "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" Bliven, 579 F.3d at 210 (quoting Stump, 435 U.S. at 362). "[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." Id. Controlling the behavior of parties at a proceeding at which a judge is presiding is certainly a function normally expected of a judge. Since conflict with and among litigants occurs with some frequency in courtrooms and conferences, a judge also must sometimes order court staff to exercise control over parties and avoid conflicts from escalating. Such actions are certainly an important and regular judicial function.

Plaintiff's assertion that having Plaintiff escorted from the Courthouse became an administrative function because Defendant had recused is unavailing. Defendant's action in ordering a belligerent litigant from a proceeding is certainly conduct arising directly from the litigation. Immunity therefore applies. Moreover, the conduct complained of here is not administrative conduct in any case: Defendant did not act to exercise administrative control over court personnel or budgets, but simply acted to

11

control parties in a proceeding before him.

The case is like Huminski, where the Court found that the Defendant Judge had engaged in a judicial act when she participated in issuing a "trespass notice" to the Plaintiff that forbade him from entering or remaining on court property. Huminski, 396 F.3d at 64. The Plaintiff had been engaged in a series of public protests on court property concerning decisions that the Defendant Judge made in a criminal matter in which the Plaintiff was involved. Id. at 59-60. The court found the Defendant's actions judicial in nature, even though they did not touch on any proceedings in front of her, because "[t]here was a nexus between her actions–whether or not her actions were motivated by security and safety concerns–and [Plaintiff's] criminal case before her." Id. at 64. Plaintiff's vociferous protests against the judge "stemmed directly and proximately from her decision to vacate his plea agreement in his criminal case over which she presided." Id. The judge's actions in issuing the trespass notices "stemmed directly from [Plaintiff's] protests." Id. As such, the judge's conduct was "'clearly designed to address . . . [Plaintiff's] conduct, and directly related to her role in adjudicating the case which engendered [Plaintiff's] conduct in the first place.'" Id. (quoting Barrett v. Harrington, 130 F.3d 246, 259 (6th Cir. 1997)). The same situation applies here, and even more directly. The Plaintiff does not allege that he was generally barred from the courthouse, but simply that the Court acted in response to a dispute in the litigation in which Plaintiff was involved by having Plaintiff escorted from the courthouse. Such conduct is clearly "directly related to adjudicating the case" which underlies this lawsuit.

12

### b. Claim for Injunctive Relief

Thus, Plaintiff may not bring a suit for damages against Defendant, who was acting in his capacity as a judge when he ordered Plaintiff out of the courthouse. Plaintiff insists, however, that, even if compensatory damages are unavailable, he is still permitted to bring a claim for injunctive relief. Injunctive relief is not normally available against a judicial officer sued pursuant to Section 1983. Thus, "'in any action brought against a judicial officer [pursuant to 42 U.S.C. § 1983] for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" Huminski 396 F.3d at 74 (quoting 42 U.S.C. § 1983). Under this provision, injunctive relief is unavailable in a suit against a judge unless the Plaintiff alleges "the violation of a declaratory decree" or "the unavailability of declaratory relief." Montero v. Travis, 171 F.3d 757, 762 (2d Cir. 1999).

The Plaintiff contends that this provision does not apply because "Defendant Dowd is not sued in his official capacity as a judge," but instead in "his individual capacity and his capacity as the court administrator." (Defendant's Brief at 12). Defendant seeks an order from the Court directing Defendant "to stay away from Plaintiff and Plaintiff's children and (2) . . . mandat[ing] [Defendant] to recuse himself as an individual from cases involving Plaintiff, even if Defendant Dowd is assigned by the Court." The Court finds Plaintiff's argument unpersuasive. As explained above, merely declaring that Plaintiff does not sue Defendant in his capacity as judge does not end the inquiry. As explained above, Plaintiff sues Defendant for acting in his capacity as judge to supervise Plaintiff's divorce case, and immunity therefore applies. Moreover, Plaintiff has not alleged that the Defendant violated any declaratory decree or that declaratory

13

relief is unavailable.  Thus, he cannot obtain injunctive relief pursuant to Section 1983.[2]

The Court's finding that Defendant Dowd is entitled to judicial immunity for his conduct in managing Plaintiff's divorce case establishes that Plaintiff could not prevail on any claim brought in the Amended Complaint.   All of Plaintiff's claims alleging a violation of his constitutional rights flow out of Defendant's adjudication of the underlying divorce case.  Defendant has immunity for all such claims, and Defendant therefore cannot raise plausible claims in any respect.  The Court will therefore decline to address the underlying merits of those claims and grant the Defendant's motion to dismiss.

**B.	Plaintiff's Motion to File a Second Amend Complaint**

In addition to opposing Defendant's motion, Plaintiff seeks leave to file a Second Amended Complaint and attaches a copy of the proposed pleading.  The proposed Second Amended Complaint contains allegations that Plaintiff filed a Freedom of Information Law request with Judge Mulvey regarding communications between Defendant and Judge Mulvey concerning the court attendant.  The proposed Second Amended Complaint also offers more specific information concerning Plaintiff's

---

[2]Further, the Court notes that nothing in this decision would prevent the Defendant from filing a motion seeking to have Defendant recuse himself from any future case involving Plaintiff or his children.  New York law provides a basis for such motions and a means of adjudicating them.  See NY CLS Jud § 14 (providing for disqualification of judges).  Plaintiff is certainly aware of this process, as he successfully moved for recusal in the underlying divorce proceeding.  Plaintiff has also taken the opportunity to raise complaints about Defendant's conduct to supervising judges.  These measures underscore that, even if Defendant's conduct were somehow improper, there is no basis for enjoining the Defendant's conduct at this point.  If Plaintiff is concerned with Defendant presiding over cases which might arise in the future, he can file a motion at an appropriate time.

14

constitutional claims.  The proposed Amended Complaint also contains an amended section seeking relief; Plaintiff now seeks declaratory, injunctive relief and money damages against the Defendant in his official capacity and injunctive relief against Defendant in his administrative capacity.  Plaintiff contends that this document cures any deficiencies in the Amended Complaint.

Plaintiff's Second Amended Complaint adds to Plaintiff's allegation that Defendant Dowd's conduct amounts to discrimination because of his national origin and retaliation for his exercise of his First Amendment rights by claiming that Defendant's conduct also represented "a violation of Plaintiff's 4th Amendment, due process and equal protection rights to be secure in his person and to have access to the courthouse where his divorce proceedings are litigated." (Second Amended Complaint, dkt. # 11-4, at ¶ 10).[3]  Plaintiff also explains in the Second Amended Complaint that he did not want to leave the courthouse when ordered to do so because "the courthouse was open for other members of the public and litigants at that time, and there was no reason for Defendant Dowd to discriminate against Plaintiff." (Second Amended Cmplt. at ¶ 13).  He likewise adds that he complied with the order to vacate the courthouse because he was "under the implied threat of use of armed force by a confirmed Nazi sympathizer who already engaged in the past in intimidation of Plaintiff because Plaintiff is Jewish." (Id. at ¶ 16).  Plaintiff therefore felt "insecure in his person"; such conduct, Plaintiff complains, violated the 4th Amendment.  (Id. at ¶¶ 17-19).  Defendant violated

---

[3]There is a slight, but not substantive, change to paragraph 11 of the Second Amended Complaint.  <u>Compare</u>, Amended Complaint, dkt. # 2, at ¶ 11 and Second Amended Complaint, dkt. # 11-4, at ¶ 11).

15

his rights by ordering an armed officer to remove him from the courthouse without reason.  (Id. at ¶ 19).  Defendant also did not order Plaintiff's wife and her attorney to leave his chambers.  (Id. at ¶ 22).[4]

The Second Amended Complaint also adds allegations concerning Plaintiff's reporting of the alleged antisemitism of the court officer in question and Plaintiff's attempts to use a freedom-of-information request to get copies of correspondence between Defendant and the supervising judge related to this issue.  (Id. at ¶¶ 36-37). Plaintiff alleges that he is entitled to presume that a report was made about this officer, and that Defendant was notified that "a Nazi sympathizer who is making intimidating anti-semitic comments to Jewish people, which such Nazi sympathizer is employed as court officer and appears at his employment with lethal weapons."  (Id. at ¶ 42).  The Court must assume, Plaintiff's Second Amended Complaint argues, that Judge Mulvey notified Defendant Dowd of Plaintiff's complaint regarding the intimidating actions of Defendant Dowd's court attendant who is a Nazi sympathizer.  (Id. at ¶ 43).  The Second Amended Complaint also alleges that the Defendant and his law clerk violated New York law by having contact with Plaintiff's children outside of a properly regulated setting.  (Id. at ¶¶ 65-67).  Plaintiff contends that "[s]eeing children outside of court

---

[4]The Second Amended Complaint contains numerous legal conclusions, such as "Defendant Dowd withdrew from the case the moment he recused from it and told the Plaintiff 'you won' after Defendant Dowd recused" and "After Defendant left Plaintiff's divorce case, Defendant no longer had any authority to make any decisions pertaining to Plaintiff as a litigant in that case or otherwise, and had no right to harass Plaintiff or order Plaintiff out of the public building and especially Defendant had no right to direct an armed court attendant to throw the Plaintiff out of the courthouse, clearly meaning that Defendant gives the court attendant permission to use force against Plaintiff." (Second Amended Complt. at ¶¶ 23-24; see also, Second Amended Complt. at ¶¶ 26, 28, 29).  The Court is not required to accept these legal conclusions.

16

proceedings was misconduct and ex part communication for the law clerk, which disqualified the judge." (Id. at ¶ 67). Plaintiff further alleges that Defendant's actions in having Plaintiff searched and ejected from the courthouse were "retaliation for Plaintiff's complaints against Defendant and Plaintiff's motion to recuse Defendant." (Id. at ¶ 69). According to Plaintiff, "Defendant Dowd had a plan to recuse and then humiliate and harass Plaintiff after Defendant Dowd recuses, hoping that Defendant Dowd's actions will be covered by judicial immunity and that Plaintiff will have no recourse from Defendant Dowd's actions." (Id. at ¶ 71). The remainder of the Second Amended Complaint restates Plaintiff's legal claims and conclusions regarding Defendant's alleged violation of Plaintiff's 1st Amendment, 4th Amendment, 5th Amendment and 14th Amendment Rights. (See id. at ¶¶ 72-83).

The new allegations added to Plaintiff's Second Amended Complaint do not cure the deficiencies of the earlier document. Like the Amended Complaint, all of Plaintiff's claims flow out of the Defendant's judicial acts. Defendant is immune for such conduct, no matter how Plaintiff characterizes it. Since amendment would be futile, the Court will deny that motion. Moreover, as Plaintiff's attempts at amending the Complaint have failed, the Court will grant the Defendant's motion to dismiss with prejudice.

## IV. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the Complaint, dkt. # 10, will be GRANTED with prejudice. Plaintiff's motion for leave to file a Second Amended Complaint, dkt. # 11, will be DENIED.

IT IS SO ORDERED

Dated:July 22, 2015

Thomas J. McAvoy
Senior, U.S. District Judge